IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HAY GROUP MANAGEMENT, INC.          :          CIVIL ACTION
                                    :
            v.                      :
                                    :
BERND SCHNEIDER                     :          NO. 04-1236

MEMORANDUM

Bartle, J.                                    February 1, 2018

        Plaintiff Hay Group Management, Inc. ("Hay

Management") has sued Defendant Bernd Schneider for breach of

fiduciary and legal duty and civil conspiracy.[1]  The allegations

in the Second Amended Complaint, filed on June 7, 2016, arise

out of Schneider's conduct prior to his purported termination in

2003 as President of Hay Management and as a top executive with

various Hay entities.  Hay Management seeks to recover from him

damages, the bulk of which is approximately $13 million, the

amount paid to him in connection with a judgment entered by a

German Court in his favor and against Hay Group Investment

_____

1.  The original complaint was filed by Hay Group Management,
Inc., Hay Acquisition Company, I, Inc., Hay Group, Inc., and Hay
Group International, Inc. on March 22, 2004 against defendants
Bernd Schneider, Lucie Boller-Bockius, and Suresh Bhula.  Bhula
filed a counterclaim against Hay Group, Inc. and Chris Matthews
on May 12, 2004.  The four plaintiffs filed a First Amended
Complaint on September 2, 2014 naming only Schneider as a
defendant.  The plaintiffs subsequently filed a Second Amended
Complaint on June 7, 2016, again naming only Schneider as a
defendant.  On January 9, 2018 all plaintiffs except Hay
Management were dismissed by agreement of the parties.  On
January 31, 2018 Chris Matthews was dismissed by agreement as a
party.

Holding B.V. ("Hay BV"). The German Court had awarded Schneider this amount for salary and bonuses which it determined had been improperly withheld for the years 2004, 2005, and 2006.[2] The payment was ultimately incurred by Hay Management. Before the court is the motion of Schneider for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.[3]

We have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Plaintiff Hay Management is incorporated in Delaware and has its principal place of business in Pennsylvania. Defendant Schneider is a citizen and resident of Germany.

I

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).[4] A dispute is genuine if the evidence is such that a

_____

2. The remainder of the damages sought by Plaintiff will be discussed in further detail later.

3. This action was originally assigned to Judge Timothy J. Savage. It was reassigned on March 31, 2004 to Judge Legrome D. Davis. Following the retirement of Judge Davis, the action was reassigned on October 5, 2017 to the undersigned.

4. Rule 56(c)(1) states:

A party asserting that a fact cannot be or is genuinely disputed must support the assertion

reasonable factfinder could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). Summary judgment is granted where there is insufficient record evidence for a reasonable factfinder to find for the nonmovant. Id. at 252.

When ruling on a motion for summary judgment, we may only rely on admissible evidence.  See, e.g., Blackburn v. United Parcel Serv., Inc., 179 F.3d 81, 95 (3d Cir. 1999).  A party asserting that a particular fact "cannot be or is genuinely disputed" must support its assertion by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  In reviewing a motion for summary judgment, the court may consider any materials in the record but is not required to look beyond those materials cited by

> by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials; or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

the parties.  Fed. R. Civ. P. 56(c)(3).  It is not the
responsibility of the court to "comb the record in search of
disputed facts."  <u>N.J. Carpenters Pension Fund v. Hous. Auth. &</u>
<u>Urban Redevelopment Agency of the City of Atl. City</u>, 68 F. Supp. 3d
545, 549 (D.N.J. 2014).  As our Court of Appeals has emphasized,
"[j]udges are not like pigs, hunting for truffles buried in
briefs."  <u>Doeblers' Pa. Hybrids, Inc. v. Doebler</u>, 442 F.3d 812, 820
n.8 (3d Cir. 2006) (quoting <u>United States v. Dunkel</u>, 927 F.2d 955,
956 (7th Cir. 1991)).

II

The Second Amended Complaint, as noted above, alleges
that Schneider breached his fiduciary and legal duties to Hay
Management and other Hay entities and engaged in civil
conspiracy as their top executive.  Specifically, it enumerates
a series of actions Schneider began taking in 2003 that were
contrary to their best interests.  As a result, he was notified
on December 7, 2003 that he was terminated from all of his
positions with the Hay entities.

Plaintiff first asserts that Schneider enlisted Lucie
Boller-Bockius, the former Finance Director and Officer of Hay
Group GmbH ("Hay Germany"), as his co-conspirator.  She aided
him in his quest to retaliate against those who he perceived
were his adversaries in the Hay entities or those who had played

a role in recommending that he receive less than 100% of his bonus opportunity for the fiscal year 2002.

The Second Amended Complaint also details Schneider's involvement in conducting a "false investigation" into the Chief Financial Officer of Hay Group, Inc., Stephen Kaye, in order to retaliate against him for the "unjustifiably low bonus" Schneider received in 2002. Hay Management maintains that Schneider knew that the allegations giving rise to the investigation were baseless and that the investigation was a waste of company money.

Hay Management alleges that further acts by Schneider constituting breach of fiduciary duty and civil conspiracy involved his manipulation of the calculation of the annual incentive compensation to be paid to various employees. Schneider purportedly did so in order to reward those who were loyal to him and punish those who were not. He enlisted individuals in the Hay entities to assist him in this endeavor. Additionally, beginning in January 2003 Schneider took steps secretly to increase the salary of Boller-Bockius and secretly provided her with a severance payment agreement and a pension in the event of early termination.

The final subject of allegations constituting breach of fiduciary and legal duty and civil conspiracy concerns Schneider's Employment Agreement with Hay BV and a Cost

Allocation Agreement ("CAA") executed by Hay BV, Hay Management, and Hay Germany. Subsequent to his purported termination, Schneider filed lawsuits in Germany and the Netherlands against Hay BV and other Hay companies, including Hay Management, challenging the validity of his termination. Ultimately in 2014, a German Court entered judgment in favor of Schneider and against Hay BV. In March 2015 Hay Germany, as the paying agent for Hay BV, paid Schneider $13,794,949.37 in accordance with the judgment.[5] Pursuant to the CAA, Hay Management reimbursed Hay Germany for most of this amount. Hay Management seeks to regain from Schneider, among other damages, the approximate $13 million that it ultimately paid to satisfy the award by the German Court to Schneider for his improper termination.[6]

In Hay Management's view, Schneider acted improperly in not having his Employment Agreement assigned in full to Hay Germany. It contends that if the Employment Agreement had been properly assigned, German law, rather than Dutch law, would have governed the validity of the termination notices sent to Schneider, and Schneider would not have filed suit in the

---

5. Although the award was in euros, the parties refer here to the amount in dollars. Thus we will refer to the award in dollars.

6. Plaintiff seeks an additional award in excess of $343,000. This includes the fees paid to the law firm retained to investigate an investigation commenced by Schneider and the salary and bonuses that were paid to certain individuals in connection with the alleged civil conspiracy.

Netherlands regarding the validity of the notices. Plaintiff maintains that under German law the termination notices sent to Schneider were valid. Thus had Schneider ensured that under the CAA the Employment Agreement was fully assigned to Hay Germany, Schneider would have been properly terminated in December 2003. According to Hay Management, if Schneider had been properly terminated in 2003, there would have been no judgment in his favor for compensation and thus Hay Management would not have incurred the damages of $13 million that it was required to reimburse Hay Germany as a result of Hay Germany's payment of the judgment to Schneider on behalf of Hay BV. Hay Management concludes that by failing to ensure that the CAA assigned the Employment Agreement to Hay Germany, Schneider did not act in the best interest of Hay Management and breached his fiduciary and legal duties to it.

III

The following facts are undisputed. Hay Management is a subsidiary corporation that is part of a larger organizational structure that contains a number of companies known as the "Hay entities." They are in the business of management consulting. Atop this organization is parent company HG (Bermuda) Limited. Below HG (Bermuda) is third-tier subsidiary Hay BV. Hay BV is a Dutch holding company that owns the assets of the other Hay entities. Plaintiff Hay Management acts as the

worldwide headquarters of the Hay companies.  It performs

corporate and administrative functions for the Hay companies and

employs most of Hay's senior executives.

Defendant Schneider is the former CEO of Hay BV and

the former President of Plaintiff Hay Management.  Schneider

entered into an Employment Agreement with Hay BV on October 1,

2001 to become its CEO.[7]  In March 2003, he was appointed as

President of Plaintiff Hay Management and other Hay entities to

replace an individual named Chris Matthews who had previously

occupied that role.  Matthews is the Chairman and Chief

Executive Officer of HG (Bermuda) and has held this position

since 1990.  Matthews also served from 1990 until December 1,

2015 as the Chairman of the boards of Plaintiff Hay Management

and Hay BV as well as other Hay companies.  From 1990 until

October 1, 2001, he was the CEO of Hay BV.

The Employment Agreement that Schneider entered into

with Hay BV governed the terms and conditions of his employment

with Hay BV.  It was signed by Schneider, Matthews, and a third

individual identified as "managing director."  The Employment

Agreement set forth the manner in which Schneider's salary and

bonus were to be determined and paid by Hay BV.  It contained

clauses providing for the assignment of the Employment

---

7.  The Employment Agreement was entered into on November 2,
2001 and made retroactive to October 1, 2001.

Agreement.  In the preamble, the Employment Agreement stated, in relevant part:

> [Hay BV] and [Schneider] desire that the period of service hereunder shall commence on October 1, 2001, and at or after such date [Hay BV] will assign this Agreement pursuant to Article 6.5 hereof to [Hay Germany], a Frankfurt corporation, or to another member of the Affiliated Group . . . to be selected by [Hay BV.]

Article 6.5 of the Employment Agreement, titled "Assignment," provided that "[Hay BV] may assign this Agreement to any other member of the Affiliated Group.  With the consent of [Schneider], [Hay BV] or any other Employer may also assign this Agreement in parts to more than one member of the Affiliated Group."  The Employment Agreement also provided that Schneider could be terminated "for cause."

On October 24, 2003, Plaintiff Hay Management, Hay BV, and Hay Germany executed the CAA, made retroactive to October 1, 2001, the date of the Employment Agreement.[8]  The CAA contained an "assignment clause" that stated that Schneider's Employment Agreement with Hay BV "is assigned to [Hay Germany] for Execution."  Among other things, the CAA set forth the conditions under which Hay Management would reimburse Hay Germany for "all costs of management activities rendered by

_____

8.  Schneider signed the CAA on October 24, 2003 on behalf of Hay Germany and Matthews signed it on November 13, 2003 on behalf of Hay Management and Hay BV.

[Schneider] which exceed" a certain fixed amount, and that "[t]he obligation of [Hay Management] covers all other contractual obligations as triggered by the Employment Agreement too."

The assignment clauses of the Employment Agreement and of the CAA later became the subjects of litigation before a German Court and are subjects of contention in this action. According to Hay Management, the intended purpose of the assignment clause in the CAA was to make Hay Management and Hay Germany responsible for proportionately allocating the costs of Schneider's compensation under the Employment Agreement and to release Hay BV of its obligation in this regard. This assignment clause had tax implications for Hay Management and other Hay entities.

Following the series of actions by Schneider detailed in the Second Amended Complaint, the Ownership Board of HG (Bermuda), the parent organization of the Hay entities, purported to terminate Schneider's employment on December 7, 2003 from all of his positions with Hay Management, Hay BV, and other Hay entities. Notice of this termination was sent to Schneider by Hay BV and Hay Germany. As noted above, Schneider thereafter challenged the validity of this termination and sought payment of salary and bonuses under his Employment Agreement. He first filed suit in Germany in the Frankfurt

Labor Court regarding the validity of the termination notices and compensation under the Employment Agreement. Schneider named as defendants Hay BV, Hay Germany, Hay Acquisition, Hay Group, Inc., Hay International, and Hay Management. The portion of the action relevant to the instant action was transferred by the Frankfurt Labor Court to the Frankfurt Regional Court.

In March 2005, while the German action was pending, Schneider filed suit in the Netherlands alleging that the resolution of the management board that led to the termination notices was invalid under Dutch law. The Frankfurt Regional Court stayed the German action pending the conclusion of the Dutch action.

In July 2006 the Dutch Court found in Schneider's favor. The Dutch Court ruled, among other things, that his termination was improper under Dutch law since Hay BV failed to obtain a valid resolution of its management board and send notice of termination in accordance with the resolution.[9]

On November 8, 2010, after the Dutch litigation concluded, the Frankfurt Regional Court lifted its stay. Upon motion, that court dismissed Hay Acquisition, Hay Group, Inc., Hay International, and Hay Management for "lack of international

_____

8. This decision was appealed to the intermediate court of appeals, which affirmed the decision. It was then appealed to the Dutch Supreme Court, which affirmed the lower court decision in December 2009.

-11-

jurisdiction." Thereafter the court ruled against Schneider and in favor of Hay BV and Hay Germany. This decision was appealed to the Higher Regional Court of Frankfurt am Main ("Higher Regional Court").

On February 19, 2014 the Higher Regional Court reversed the lower court decision and ruled that since Schneider's termination was invalid, he continued to be employed by Hay BV through 2006 when his contract expired. It found that the CAA did not assign the Employment Agreement for all purposes from Hay BV to Hay Germany but rather only assigned it for purposes of execution. Consequently Hay BV, rather than Hay Germany and Hay Management, was responsible for Schneider's outstanding salary and applicable bonuses.

The Higher Regional Court entered judgment in favor of Schneider and against Hay BV for his salary and bonuses for the years 2004, 2005, and 2006, plus interest.[10] The total amount was reduced pursuant to the deduction of wage taxes and the judgment entered by the German Court in favor Hay Germany and against Schneider on the counterclaim of Hay Germany for breach of fiduciary duty.[11] The judgment of $13,794,591.37 was paid to

---

10. An appeal of this order was taken and the judgment became final when the Federal Court of Justice of Germany declined to hear the case.

11. In the counterclaim, Hay Germany sought repayment of amounts paid to Lucie Boller-Bockius following her early

Schneider by Hay Germany, as paying agent for Hay BV.[12]  Under
the CAA, Hay Management was required to reimburse Hay Germany
for all compensation costs exceeding a certain fixed amount.
Thus Hay Management reimbursed Hay Germany for most but not all
of the amount Hay Germany paid to Schneider.

The parties have submitted expert reports pursuant to
Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.
Dr. Philipp S. Fischinger provided an expert report on behalf of
Hay Management and Dr. Thomas Thees did so on behalf of
Schneider.

Dr. Fischinger opined, in relevant part, that while
"there is no legal rule of compulsory counterclaim" in Germany,
"it is well established that a defendant who has potential
claims against a plaintiff is free to either (i) file a
counterclaim ("Widerklage") or (ii) sue the plaintiff in a
completely different lawsuit in the same or a different court."
In this opinion, Dr. Fischinger also stated that under German
procedure, "a party's means of defense (or attack) can be barred

termination pursuant to her severance agreement.  Hay Germany
alleged that Schneider breached his fiduciary duty to Hay
Germany by taking secret steps to ensure that Boller-Bockius'
severance payment was increased in the event of her early
termination.

12.  The amounts awarded to Schneider and to Hay Germany,
respectively, by the Higher Regional Court were awarded in
euros.  However since the parties refer to the amount paid to
Schneider by Hay Germany on behalf of Hay BV in dollars, we too
refer to it in dollars.

because of presenting its <u>facts</u> too late, this <u>does</u> <u>not</u> <u>apply</u> <u>to</u> <u>counterclaims</u> as counterclaims are not deemed to be means of defense (attacks), but as an independent counter attack" (emphasis in original).

> Dr. Thees opined, in relevant part, that:

> > Usually in German litigation all counter claims against a claim are made by the defendant prior to the last oral hearing in the court of first instance in order to avoid that such counter claims are barred ("präkludiert"). Counter claims that are raised after the last oral hearing in the court of first instance usually are excluded from the litigation. They can only be considered by the court of second instance if the relevant party can prove that it did not act negligently by not asserting the means of defense earlier. . . . Therefore in German civil court litigation all facts relevant for defenses and counter claims are usually asserted in the first instance[.]

Although the experts disagree as to whether the filing of any counterclaim arising out of the original lawsuit is compulsory under German law, there is no dispute that a defendant in a German lawsuit may file counterclaims and of course may raise defenses to plaintiff's claims.

Dr. Thees concludes in his expert report that "all of the claims asserted by the U.S. Hay entities in the U.S. were either asserted by counterclaim or defense, or could have been asserted in the German proceedings." While Dr. Fischinger disagrees that all the claims were asserted in the German

litigation, tellingly, he does not disagree that the claims raised here "could have been asserted" by way of counterclaims or defenses.

IV

Schneider argues in support of his motion for summary judgment that this action is barred under the doctrine of res judicata as a result of the judgment entered in his favor as a plaintiff in the German Higher Regional Court. Since our subject matter jurisdiction is based on diversity of citizenship, we must first determine whether federal or state law of res judicata, that is claim preclusion, applies.[13]

In Lubrizol Corporation v. Exxon Corporation, 929 F.2d 960, 962-63 (3d Cir. 1991), our Court of Appeals noted that where successive diversity cases are involved, the majority of Courts of Appeals apply federal res judicata law, while a number of decisions of the Third Circuit have applied state law without any discussion of the choice of law issue.[14]

---

13. The term claim preclusion is now generally favored rather than res judicata. However, since the parties use res judicata, we will do so in this Memorandum.

14. We note that in this case we do not have two successive diversity actions or one diversity action and a state court action. See Hartmann v. Time, Inc., 166 F.2d 127 (3d Cir. 1947), cert. denied, 334 U.S. 838 (1948). Instead, a German appellate court entered a judgment in the first action and only this pending action is based on diversity of citizenship.

The Court of Appeals then cited two Supreme Court cases which were decided after the Third Circuit decisions applying state res judicata law:  Hanna v. Plumer, 380 U.S. 460 (1965) and Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525 (1958).  Lubrizol, 929 F.2d at 963.  Those two decisions recognized that earlier Supreme Court precedents directed federal courts sitting in diversity actions to apply state substantive law and to make use of an outcome-determinative test to determine what is substantive.  See Erie R. Co. v. Tompkins, 304 U.S. 64 (1938); Guar. Trust Co. v. York, 326 U.S. 99 (1945). Nonetheless, Byrd and Hanna explain that this test should not be applied woodenly.  In Byrd, the Supreme Court ruled that in a diversity action in the District Court of South Carolina, "strong federal policy" required that a jury be permitted to decide an issue where South Carolina law provided for the issue to be decided by a judge.  356 U.S. at 538.  The Supreme Court acknowledged that as a result of its decision the outcome of the case may be different than if state law applied.

Similarly, in Hanna, the Supreme Court held that the Federal Rules of Civil Procedure relating to service of process governed over a more restrictive Massachusetts statute on service even though application of the federal rule in that case would be outcome determinative.  380 U.S. at 463-64.  The Federal Rules, the Court reasoned, are procedural and not

-16-

substantive in the sense understood in Erie.  Id. at 464-65.  As
the Supreme Court stated in Hanna, "The 'outcome-determinative'
test . . . cannot be read without reference to the twin aims of
the Erie rule:  discouragement of forum-shopping and avoidance
of inequitable administration of the laws."  Id. at 468.  After
reference to Byrd and Hanna, the Court of Appeals in Lubrizol
did not resolve the issue of whether federal or state
res judicata law applied in the matter before it because it
concluded that the law was the same either way.  929 F.2d at
963.

    We note preliminarily that the doctrine of
res judicata does not go to or affect the merits of any claim.
See Answering Serv., Inc. v. Egan, 728 F.2d 1500, 1503-06
(D.C. Cir. 1984).  The purpose of the rule is to promote
judicial economy, to establish certainty in legal relations, and
to avoid inconsistent decisions.  See Comm'r of Internal Rev. v.
Sunnen, 333 U.S. 591, 597 (1948); Turner v. Crawford Square
Apartments III, L.P., 449 F.3d 542, 548-49 (3d Cir. 2006).  In
our view, it is designed for "avoidance of inequitable
administration of the laws."  Hanna, 380 U.S. at 468.  There is
nothing before us to indicate that the substantive or
outcome-determinative test as explained in Byrd and Hanna
compels the application of state law.

Under the federal doctrine of res judicata, a
defendant must establish that there has been:  (1) a final
judgment on the merits; (2) the same parties or their privies;
and (3) a subsequent suit based on the same cause of action.
Lubrizol, 929 F.2d at 963.

The first requirement of federal res judicata has been
satisfied here.  There is no dispute that a valid final judgment
from a German court has been entered in favor of Bernd
Schneider, the current defendant who was the plaintiff in that
earlier action.  Furthermore, the parties agree that the foreign
judgment is deserving of comity.  See United States ex rel
Saroop v. Garcia, 109 F.3d 165, 169-70 (3d Cir. 1997); Hilkmann
v. Hilkmann, 858 A.2d 58, 64-67 (Pa. 2004).

The next issue to be resolved is whether Hay
Management, the plaintiff here, is in privity with Hay BV, the
Hay entity against whom the judgment was entered in favor of
Schneider in the Higher Regional Court.  Privity exists where
there is "a close or significant relationship" between the two
parties.  Lubrizol, 929 F.2d at 966.  This relationship can
exist where the successive parties are parent and subsidiary.
Id.

Hay BV, a wholly-owned subsidiary of the ultimate
parent corporation HG (Bermuda) Limited, is a holding company.
Hay Management is also a wholly-owned subsidiary and serves as

the worldwide headquarters for all of the Hay companies. Hay Management is where most of the senior corporate officers are employed and where corporate and administrative functions are performed for the Hay entities. At all relevant times, Hay BV and Hay Management had the same Chairman, Chris Matthews.

In addition, Hay Management had a prior contractual relationship under the CAA with Hay BV and Hay Germany whereby Hay Management was required to reimburse Hay Germany for Schneider's salary that exceeded a certain fixed amount. Hay Germany was used as the paying agent on Hay BV's behalf. Nonetheless, Hay Management was bound to reimburse Hay Germany for the majority of the judgment paid to Schneider. Indeed, while the judgment of the Higher Regional Court was against Hay BV, it was Hay Management which ultimately was out-of-pocket for the money as a result of its contractual obligation to Hay Germany and the use of Hay Germany as Hay BV's paying agent. Under these undisputed facts, Hay BV and Hay Management were privies. Thus the second prong of federal res judicata has been met.[15]

---

15. The fact that Hay Management, Hay Acquisition, Hay Group, Inc., and Hay International were dismissed from the German litigation on December 23, 2010 does not affect our res judicata analysis. Two parties can be in privity for res judicata purposes even though the court in the first lawsuit for some reason did not have subject matter or personal jurisdiction over one of the parties in privity. The issue for res judicata is

The only question remaining is whether the present lawsuit arises out of the same cause of action as litigated in the German courts. The Court of Appeals in United States v. Althone Industries, Inc., 746 F.2d 977, 983 (3d Cir. 1984), noted that for purposes of res judicata a "cause of action" cannot be "precisely defined." The focus begins with the requirement that the plaintiff present in one lawsuit "all the claims for relief that he may have arising out of the same transaction or occurrence." Id. at 984. The inquiry is fact driven. We must determine whether there is "the essential similarity of the underlying events giving rise to the various legal claims[.]" Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982). If so, res judicata applies. A plaintiff's reliance on different legal theories in a second action is irrelevant.

Res judicata is not limited to the situation found in Lubrizol, Althone, and Davis where the parties are aligned in the same way in the original and subsequent lawsuits. Res judicata may also be applicable where the parties are reversed, that is, where the plaintiff in the first suit is now the defendant in the second suit and the defendant or a privy of the defendant in the original suit is now the plaintiff. The

whether the parties have a close or significant relationship. Their citizenship or location is irrelevant.

Supreme Court has explained that res judicata "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding." Brown v. Felsen, 442 U.S. 127, 131 (1979).

To decide for res judicata purposes whether the same cause of action is being raised a second time, the court looks not only at the basis of the plaintiff's claim in the first action but also to what constituted available defenses or counterclaims, including those not raised and not established by competent evidence in the first lawsuit. See id. For example, if a judgment in favor of a plaintiff upholding a promissory is entered, a subsequent lawsuit by the defendant raising for the first time a defense such as forgery, writ of consideration, or payment is "of no legal consequence."[16] See Cromwell v. Cty. of Sac, 94 U.S. 351, 352 (1876). More broadly, res judicata controls so as to bar the privy of a defendant who lost the first lawsuit, now turned plaintiff, from seeking to nullify in a second lawsuit a valid judgment obtained against that defendant in the first lawsuit. See Bank of Montreal v. Kough,

---

16. We recognize that if a defense for some legitimate reason is not available to a defendant in the first lawsuit, res judicata may not apply. This is not the situation here. See Restatement (Second) of Judgments § 22, cmt. f.

-21-

612 F.2d 467, 472-73 (9th Cir. 1980); Restatement (Second) of Judgments § 22(2)(b), cmt. f, and illus. 9.

Again, the court must look not to the legal theories advanced in the different lawsuits or to some narrow definition of cause of action useful in other contexts but to whether there is an essential similarity of underlying events. Here the court must also take into account any defenses or counterclaims that Hay BV had available in the German lawsuit as a defendant and whether Plaintiff Hay Management, a privy to Hay BV, seeks in effect to nullify in this lawsuit the German judgment entered against Hay BV.

At issue in the German litigation was Schneider's purported termination, Hay BV and Hay Germany's notices of termination to Schneider, and Schneider's compensation. In adjudicating these issues, the Higher Regional Court scrutinized the language of the Employment Agreement and the CAA. For example, the Court noted that Schneider's Employment Agreement had been "individually adjusted," rather than simply being a standard "form contract." The Court considered that Matthews and Schneider had signed the Employment Agreement and CAA on behalf of themselves and behalf of Hay entities, respectively. The Court analyzed the effect on the Hay entities of the assignment language contained in the Employment Agreement and the CAA. In sum, the language of these contracts, as well as

their effect on the various Hay entities, were woven throughout the decision of the Higher Regional Court.

Further, the conduct of Schneider as a top executive of the Hay entities played a role in the German Court's determination of the bonus to be awarded to Schneider. In considering his request for compensation under the Employment Agreement, the Court discussed Schneider's fiduciary duty, and any breach thereof, to Hay BV and Hay Germany. The German Court ultimately based its award to Hay Germany on its counterclaim for repayment of severance money paid to Lucie Boller-Bockius on a breach of fiduciary duty by Schneider.

These very same allegations about Boller-Bockius from the German lawsuit are repeated in the Second Amended Complaint in this action. Both the German Court's decision and Plaintiff's Second Amended Complaint also reference Schneider's investigation of Hay Group, Inc.'s Chief Financial Officer Stephen Kaye. Again, Dr. Fischinger and Dr. Thees, the experts for the parties here, confirm that Hay BV or the various Hay entities either did or could have raised by defense or counterclaim all the factual allegations and legal theories that Hay Management has set forth in its Second Amended Complaint.

All but a small part of the damages Hay Management seeks to recover from Schneider in this second lawsuit consists of the very $13 million which it paid as a result of the German

judgment entered against Hay BV and in Schneider's favor. Viewing side-by-side the German litigation and the allegations in the Second Amended Complaint, there is clearly an essential similarity of underlying events in the two lawsuits. <u>Davis</u>, 688 F.2d at 171. The existence of different legal theories in the two lawsuits, which Plaintiff stresses, is of no significance.

Putting it in its starkest terms, Hay Management, as Hay BV's privy, is seeking to nullify the valid final judgment of the Higher Regional Court where Schneider prevailed. This is precisely what res judicata is intended to prevent. <u>See</u> <u>Bank of Montreal</u>, 612 F.2d at 472-73; Restatement (Second) of Judgments § 22(2)(b), cmt. f, and illus. 9. Under the federal doctrine of res judicata, this action is barred.

Like the Court of Appeals in <u>Lubrizol</u>, we now turn to an analysis of the relevant state res judicata jurisprudence to determine if a different result would obtain. 929 F.2d at 965. Under <u>Erie</u>, we must apply in this diversity case the substantive law of the forum where the federal court sits. 304 U.S. at 78. If the doctrine of res judicata is deemed to be substantive under the framework of <u>Byrd</u> and <u>Hanna</u>, we must apply the law of Pennsylvania. In <u>Balent v. City of Wilkes-Barre</u>, 669 A.2d 309, 313 (Pa. 1995), the Pennsylvania Supreme Court explained:

> Res judicata, or claim preclusion, is a
> doctrine by which a former adjudication bars
> a later action on all or part of the claim
> which was the subject of the first action.
> Any final, valid judgment on the merits by a
> court of competent jurisdiction precludes
> any future suit between the parties or their
> privies on the same cause of action.  Allen
> v. McCurry, 449 U.S. 90, 94 (1980).
> Res judicata applies not only to claims
> actually litigated, but also to claims which
> could have been litigated during the first
> proceeding if they were part of the same
> cause of action.  Id.

(internal citations omitted).  We do not see any material

difference between Pennsylvania law of res judicata and the

federal law.  Thus, we need not decide which law governs as this

action cannot proceed under either scenario.

Finally, Plaintiff asserts that Pennsylvania would,

pursuant to its conflict of laws rules, apply Delaware law on

the issue of res judicata.  See Klaxon Co. v. Stentor Elec. Mfg.

Co., 313 U.S. 487 (1941).  It argues that its claim of breach of

fiduciary duty against Schneider is governed by Delaware law

since the plaintiff was incorporated in that state.  This

argument need not detain us long.  Even if Pennsylvania would

invoke Delaware res judicata law, Delaware law in this regard is

similar in all material respects to federal and Pennsylvania

law.  See Mott v. State, 49 A.3d 1186, 1189-90 (Del. 2012).  The

application of Delaware res judicata principles would not affect

the outcome.

Accordingly, the motion of defendant Bernd Schneider for summary judgment against Plaintiff Hay Management will be granted.[17]

---

17. Defendant has raised a number of other arguments in support of his motion for summary judgment. In light of our decision, we need not reach them.